﻿Citation Nr: AXXXXXXXX
Decision Date: 01/17/19 Archive Date: 01/16/19

DOCKET NO. 180910-868
DATE: January 17, 2019

ORDER

Entitlement to a disability rating in excess of 10 percent for chondromalacia of the right patella with degenerative joint disease is denied.

Entitlement to a disability rating in excess of 10 percent for degenerative joint disease of the left knee is denied.

Entitlement to a disability rating in excess of 10 percent for left knee instability is denied.

Service connection for bilateral pes planus is granted. 

REMANDED

Service connection for a left hip disability is remanded. 

Service connection for a low back disability is remanded.

FINDINGS OF FACT

1. For the period on appeal, the Veteran’s chondromalacia of the right patella with degenerative joint disease was manifested as painful motion, but not ankylosis, limitation of flexion to 45 degrees, limitation of extension to 10 degrees, dislocated or removed semilunar cartilage, or impairment of the tibia or fibula. 

2. For the period on appeal, the Veteran’s degenerative joint disease of the left knee was manifested as painful motion, but not ankylosis, limitation of flexion to 45 degrees, limitation of extension to 10 degrees, dislocated or removed semilunar cartilage, or impairment of the tibia or fibula. 

3. For the period on appeal, the Veteran’s left knee instability was not manifested as more than slight lateral instability.

4. The Veteran’s bilateral pes planus was aggravated by his active duty service.

CONCLUSIONS OF LAW

1. For the period on appeal, the criteria for a disability rating in excess of 10 percent for chondromalacia of the right patella with degenerative joint disease have not been met. 38 U.S.C. §§ 1155, 5107 (2012); 38 C.F.R. §§ 3.102, 4.1-4.14, 4.21, 4.40, 4.45, 4.59, 4.71a, Diagnostic Codes 5010-5260 (2017). 

2. For the period on appeal, the criteria for a disability rating in excess of 10 percent for degenerative joint disease of the left knee have not been met. 38 U.S.C. §§ 1155, 5107; 38 C.F.R. §§ 3.102, 4.1-4.14, 4.21, 4.40, 4.45, 4.59, 4.71a, Diagnostic Codes 5010-5260. 

3. For the period on appeal, the criteria for a disability rating in excess of 10 percent for left knee instability have not been met. 38 U.S.C. §§ 1155, 5107; 38 C.F.R. §§ 3.102, 4.1-4.14, 4.21, 4.40, 4.45, 4.59, 4.71a, Diagnostic Codes 5010-5257 (2017). 

4. With resolution of reasonable doubt in the Veteran’s favor, the criteria for a grant of service connection for bilateral pes planus have been met. 38 U.S.C. §§ 1111, 1131, 5107 (2012); 38 C.F.R. §§ 3.102, 3.303, 3.304, 3.306 (2017). 

REASONS AND BASES FOR FINDINGS AND CONCLUSIONS

On August 23, 2017, the President signed into law the Veterans Appeals Improvement and Modernization Act, Pub. L. No. 115-55 (to be codified as amended in scattered sections of 38 U.S.C.), 131 Stat. 1105 (2017), also known as the Appeals Modernization Act (AMA). This law creates a new framework for Veterans dissatisfied with VA’s decision on their claim to seek review. The Board is honoring the Veteran’s choice to participate in VA’s test program, RAMP, the Rapid Appeals Modernization Program.

The Veteran served on active duty in the Marine Corps from June 1978 to July 1979. This matter is on appeal from an October 2017 rating decision. The Veteran selected the Supplemental Claim lane when he submitted the RAMP election form in May 2018. Accordingly, the August 2018 RAMP rating decision considered the evidence of record prior to the issuance of the RAMP rating decision. The Veteran timely appealed this RAMP rating decision to the Board and requested direct review of the evidence considered by the Agency of Original Jurisdiction (AOJ).

In the August 2018 RAMP decision, the AOJ found that new and relevant evidence was submitted to warrant readjudicating the claims for service connection for pes planus and left hip and low back disabilities. The Board is bound by these favorable findings. AMA, Pub. L. No. 115-55, § 5104A, 131 Stat. 1105, 1106-07. 

Increased Ratings

Disability ratings are determined by applying a schedule of ratings that is based on average impairment of earning capacity. Separate Diagnostic Codes identify the various disabilities. 38 U.S.C. § 1155; 38 C.F.R. Part 4 (2017). Each disability must be viewed in relation to its history and the limitation of activity imposed by the disabling condition should be emphasized. 38 C.F.R. § 4.1. 

Where there is a question as to which of two disability evaluations shall be applied, the higher evaluation is to be assigned if the disability picture more nearly approximates the criteria required for that rating. Otherwise, the lower rating is to be assigned. 38 C.F.R. § 4.7. 

In determining the appropriate rating for musculoskeletal disabilities, particular attention is focused on functional loss of use of the affected part. Factors of joint disability include increased or limited motion, weakened movement, excess fatigability, incoordination, and painful movement, including during flare-ups and after repeated use. DeLuca v. Brown, 8 Vet. App. 202, 206-08 (1995); 38 C.F.R. § 4.45. A finding of functional loss due to pain must be supported by adequate pathology and evidenced by the visible behavior of the claimant. 38 C.F.R. § 4.40. 

Additionally, “pain itself does not rise to the level of functional loss as contemplated by the VA regulations applicable to the musculoskeletal system.” Mitchell v. Shinseki, 25 Vet. App. 32, 38 (2011). Pain in a particular joint may result in functional loss, but only if it limits the ability to perform the normal working movements of the body with normal excursion, strength, speed, coordination, or endurance. Id.; 38 C.F.R. § 4.40. Under 38 C.F.R. § 4.59, painful joints are entitled to at least the minimum compensable rating for the joint. In this case, at least the minimum compensable rating has been in effect during the entire appeal period. 

Nonetheless, even when the background factors listed in § 4.40 or 4.45 are relevant when evaluating a disability, the rating is assigned based on the extent to which motion is limited, pursuant to 38 C.F.R. § 4.71a; a separate or higher rating under § 4.40 or 4.45 itself is not appropriate. See Thompson v. McDonald, 815 F.3d 781, 785 (Fed. Cir. 2016) (“[I]t is clear that the guidance of § 4.40 is intended to be used in understanding the nature of the veteran’s disability, after which a rating is determined based on the § 4.71a criteria.”).

1. Entitlement to a disability rating in excess of 10 percent for chondromalacia of the right patella with degenerative joint disease from August 15, 2017 to August 22, 2018. 

The Veteran contends that his chondromalacia of the right patella with degenerative joint disease warrants a higher rating than that currently assigned. It is currently rated under 38 C.F.R. § 4.71a, Diagnostic Codes 5010-5260, with a 10 percent rating from December 13, 1999 to May 13, 2004, a 100 percent rating from May 14, 2004 to June 30, 2004, and a 10 percent rating on and after July 1, 2004. VA received the Veteran’s claim for an increased rating on August 15, 2017.

Hyphenated diagnostic codes are used when a rating under one Diagnostic Code requires use of an additional Diagnostic Code to identify the basis for the evaluation assigned; the additional code is shown after the hyphen. 38 C.F.R. § 4.27 (2017). Diagnostic Code 5010 pertains to traumatic arthritis and Diagnostic Code 5260 pertains to limitation of leg flexion.

Diagnostic Code 5010 provides for rating as degenerative arthritis under Diagnostic Code 5003. Diagnostic Code 5003 provides, when limitation of motion is noncompensable under the appropriate Diagnostic Code, for a 10 percent rating for each major joint or group of minor joints affected by limitation of motion. Id. Limitation of motion must be objectively confirmed by findings such as swelling, muscle spasm, or satisfactory evidence of painful motion. Id. For rating purposes, the knee is considered a major joint. 38 C.F.R. § 4.45. As the Veteran’s disability rating is already based on painful motion throughout the period on appeal, further discussion of Diagnostic Code 5010 is not warranted. 

Limitation of flexion of the leg is evaluated as follows: flexion limited to 15 degrees (30 percent); flexion limited to 30 degrees (20 percent); flexion limited to 45 degrees (10 percent); and flexion limited to 60 degrees (noncompensable). 38 C.F.R. § 4.71a, Diagnostic Code 5260. 

For VA purposes, a normal range of knee motion is from 0 degrees of extension to 140 degrees of flexion. 38 C.F.R. § 4.71, Plate II.

There are additional Diagnostic Codes that apply to knee disorders. 38 C.F.R. § 4.45(f) (2017). 38 C.F.R. § 4.71a, Diagnostic Code 5256 (2017) pertains to ankylosis of the knee and is not for application in this case because the Veteran does not have ankylosis. 38 C.F.R. § 4.71a, Diagnostic Code 5257 (2017) pertains to recurrent subluxation or lateral instability of the knee and is not for application in this case because the Veteran already has a separate rating for right knee instability and that rating is not before the Board. 

Meniscal conditions are evaluated as follows: dislocated semilunar cartilage with frequent episodes of “locking,” pain, and effusion into the joint (20 percent); and symptomatic removal of semilunar cartilage (10 percent). 38 C.F.R. § 4.71a, Diagnostic Codes 5258 and 5259 (2017). 

Limitation of extension of the leg is evaluated as follows: extension limited to 45 degrees (50 percent); extension limited to 30 degrees (40 percent); extension limited to 20 degrees (30 percent); extension limited to 15 degrees (20 percent); extension limited to 10 degrees (10 percent); and extension limited to 5 degrees (noncompensable). 38 C.F.R. § 4.71a, Diagnostic Code 5261 (2017). 

Impairment of the tibia and fibula is evaluated as follows: nonunion with loose motion, requiring a brace (40 percent); malunion with marked knee or ankle disability (30 percent); malunion with moderate knee or ankle disability (20 percent); and malunion with slight knee or ankle disability (10 percent). 38 C.F.R. § 4.71a, Diagnostic Code 5262 (2017).

The Veteran was afforded a VA examination in September 2017. The examiner diagnosed right knee chondromalacia patella with degenerative joint disease. The Veteran reported generalized knee pain, increased with standing and walking. He did not report flare ups. On examination, range of right knee motion was reported as 0 degrees of extension to 90 degrees of flexion, but the range of motion did not itself contribute to functional loss. There was pain on each range of motion and it caused functional loss. Because the examiner did not separately quantify the functional loss due to pain, the Board finds that the ranges of motion listed likely reflect functional loss due to pain. There was evidence of pain with weight bearing and of generalized tenderness. There was also objective evidence of crepitus. There was no additional loss of motion on repetition. The examiner was unable to opine as to the functional impact of flare ups or repetition over time without resorting to speculation. There was functional impairment due to decreased movement, which was due to pain and adhesions. There was no muscle atrophy or reduction in muscle strength. There was no ankylosis. There was no tibial or fibular impairment. There was arthroscopic surgery in 2004. (A previous VA examination report in April 2005 clarifies that this included a partial medial meniscectomy.) The Veteran’s residuals of surgery included frequent episodes of joint pain. The Veteran reported regularly wearing a knee brace and using a cane due to knee pain. The examiner found that the Veteran’s right knee disability would have an impact on his ability to work in the form of inability to stand and walk for prolonged periods. The examiner added that there was evidence of pain on passive range of motion testing and when the joint was used in non-weight bearing.

The preponderance of the evidence described above shows that the Veteran’s chondromalacia of the right patella with degenerative joint disease does not warrant a rating in excess of 10 percent under Diagnostic Code 5260 during the period on appeal. No examiner or treatment provider has found that the Veteran’s right leg flexion has been limited to less than 90 degrees during the period on appeal. A 20 percent rating under Diagnostic Code 5260 requires limitation to 30 degrees. 

In addition, no examiner or treatment provider has found that the Veteran’s right leg extension has been limited beyond normal (0 degrees). Therefore, a separate rating under Diagnostic Code 5261 is not warranted, as the criteria for even a noncompensable rating require extension be limited to 5 degrees. The preponderance of the evidence also shows that the Veteran’s right knee disability has not been manifested by ankylosis or impairment of the tibia or fibula. 

The Board acknowledges the Veteran’s partial meniscectomy and episodes of pain, but there is nothing in the record to indicate that the meniscus was removed, that it is dislocated, or that there are episodes of “locking” or effusion into the joint. The Veteran’s postoperative scar is already rated separately and that rating is not before the Board. 

The Board has considered the Veteran’s lay statements. The Veteran is competent to report his own observations with regard to the symptoms of his right knee disability and his descriptions are credible. See Jandreau v. Nicholson, 492 F.3d 1372, 1376-77 (Fed. Cir. 2007). However, nothing in the Veteran’s lay statements provides a basis for assigning a higher rating than those already in effect under any Diagnostic Code pertaining to musculoskeletal disabilities of the knee. 

In addition, the Board considered whether a higher rating is warranted under the regulations relating to additional functional loss due to pain, weakness, fatigability, incoordination, and other factors under DeLuca, 8 Vet. App. at 204-07; 38 C.F.R. §§ 4.40, 4.45. There is nothing to indicate that the Veteran’s pain causes functional impairment equivalent to the criteria for a rating in excess of 10 percent under the Diagnostic Codes based on limitation of motion of the knee. 

Because the Board considered the applicable ratings under every Diagnostic Code pertaining to musculoskeletal disabilities of the knee, the Board finds that there are no other potentially applicable Diagnostic Codes by which a higher rating can be assigned.

2. Entitlement to a disability rating in excess of 10 percent for degenerative joint disease of the left knee from August 15, 2017 to August 22, 2018.

The Veteran contends that his degenerative joint disease of the left knee warrants a higher rating than that currently assigned. It is currently rated under 38 C.F.R. § 4.71a, Diagnostic Codes 5010-5260, with a 10 percent rating on and after December 13, 1999. VA received the Veteran’s claim for an increased rating on August 15, 2017.

As the Veteran’s disability rating is already based on painful motion throughout the period on appeal, further discussion of Diagnostic Code 5010 is not warranted.

The Veteran already has a separate rating for left knee instability, which is discussed in further detail below.

The Veteran was afforded a VA examination in September 2017. The examiner diagnosed left knee degenerative joint disease. The Veteran reported generalized knee pain, increased with standing and walking. He did not report flare ups. On examination, range of left knee motion was reported as 0 degrees of extension to 90 degrees of flexion, but the range of motion did not itself contribute to functional loss. There was pain on each range of motion and it caused functional loss. Because the examiner did not separately quantify the functional loss due to pain, the Board finds that the ranges of motion listed likely reflect functional loss due to pain. There was evidence of pain with weight bearing and of generalized tenderness. There was also objective evidence of crepitus. There was no additional loss of motion on repetition. The examiner was unable to opine as to the functional impact of flare ups or repetition over time without resorting to speculation. There was functional impairment due to decreased movement, which was due to pain and adhesions. There was no muscle atrophy or reduction in muscle strength. There was no ankylosis. There was no tibial or fibular impairment. There was arthroscopic surgery in 1999. (A previous VA examination report in March 2000 clarifies that this included a partial medial and lateral meniscectomy.) The Veteran’s residuals of surgery included frequent episodes of joint pain. The Veteran reported regularly wearing a knee brace and using a cane due to knee pain. The examiner found that the Veteran’s left knee disability would have an impact on his ability to work in the form of inability to stand and walk for prolonged periods. The examiner added that there was evidence of pain on passive range of motion testing and when the joint was used in non-weight bearing.

The preponderance of the evidence described above shows that the Veteran’s degenerative joint disease of the left knee does not warrant a rating in excess of 10 percent under Diagnostic Code 5260 during the period on appeal. No examiner or treatment provider has found that the Veteran’s left leg flexion has been limited to less than 90 degrees during the period on appeal. A 20 percent rating under Diagnostic Code 5260 requires limitation to 30 degrees. In addition, no examiner or treatment provider has found that the Veteran’s left leg extension has been limited beyond the normal range; a 20 percent rating under Diagnostic Code 5261 requires limitation to 15 degrees. The preponderance of the evidence also shows that the Veteran’s left knee disability has not been manifested by ankylosis or impairment of the tibia or fibula. 

The Board acknowledges the Veteran’s partial meniscectomy and episodes of pain, but there is nothing in the record to indicate that the meniscus was removed, that it is dislocated, or that there are episodes of “locking” or effusion into the joint. The Veteran’s postoperative scar is already rated separately and that rating is not before the Board. 

The Board has considered the Veteran’s lay statements. The Veteran is competent to report his own observations with regard to the symptoms of his left knee disability and his descriptions are credible. See Jandreau, 492 F.3d at 1376-77. However, nothing in the Veteran’s lay statements provides a basis for assigning a higher rating than those already in effect under any Diagnostic Code pertaining to musculoskeletal disabilities of the knee. 

In addition, the Board considered whether a higher rating is warranted under the regulations relating to additional functional loss due to pain, weakness, fatigability, incoordination, and other factors under DeLuca, 8 Vet. App. at 204-07; 38 C.F.R. §§ 4.40, 4.45. There is nothing to indicate that the Veteran’s pain causes functional impairment equivalent to the criteria for a rating in excess of 10 percent under the Diagnostic Codes based on limitation of motion of the knee. 

Because the Board considered the applicable ratings under every Diagnostic Code pertaining to musculoskeletal disabilities of the knee, the Board finds that there are no other potentially applicable Diagnostic Codes by which a higher rating can be assigned.

3. Entitlement to a disability rating in excess of 10 percent for left knee instability from August 15, 2017 to August 22, 2018. 

The Veteran contends that his left knee instability warrants a higher rating than that currently assigned. It is currently rated under 38 C.F.R. § 4.71a, Diagnostic Codes 5010-5257, with a 10 percent rating on and after September 24, 2015. VA received the Veteran’s claim for an increased rating on August 15, 2017.

Under Diagnostic Code 5257, a 10 percent evaluation is warranted when there is slight recurrent subluxation or lateral instability. A 20 percent evaluation is warranted when there is moderate recurrent subluxation or lateral instability. A 30 percent evaluation is warranted for severe recurrent subluxation or lateral instability. 38 C.F.R. § 4.71a (2015). 

Because Diagnostic Code 5257 is based upon instability and subluxation, not limitation of motion. the criteria set forth in DeLuca do not apply. See DeLuca, 8 Vet. App. at 206. In addition, for the same reason, consideration of a rating based on painful motion under Diagnostic Code 5010 is not warranted.

The Veteran was afforded a VA examination in September 2017. There was a history of slight lateral instability in the left knee, but not recurrent subluxation. There was no history of recurrent effusion. Joint stability testing was normal for anterior and posterior stability, but showed 0-5 millimeters of medial and lateral instability. The examiner characterized this degree of medial and latera instability as slight. The Veteran reported regularly wearing a brace due to knee pain.

The preponderance of the evidence described above shows that the Veteran’s left knee instability does not warrant a rating in excess of 10 percent under Diagnostic Code 5257 during the period on appeal. The Veteran’s left knee instability is not more accurately described as moderate. The need for a brace shows that instability is present and the September 2017 VA examiner found instability, but the examiner characterized it as slight. There are no lay descriptions of the Veteran’s instability, such as its frequency or how it manifests during daily life outside of a clinical setting, during the period on appeal. 

In reaching the conclusions above, the Board considered the doctrine of reasonable doubt, however, as the preponderance of the evidence is against the claims denied above, the doctrine is not for application with regard to those claims. Gilbert v. Derwinski, 1 Vet. App. 49 (1990). 

Service Connection

Service connection may be established for a disability resulting from disease or injury incurred in or aggravated by service. 38 U.S.C. § 1131; 38 C.F.R. § 3.303. Regulations also provide that service connection may be granted for any disease diagnosed after discharge, when all the evidence, including that pertinent to service, establishes that the disability was incurred in service. 38 C.F.R. § 3.303(d).

Generally, in order to prove service connection, there must be competent, credible evidence of (1) a current disability, (2) in-service incurrence or aggravation of an injury or disease, and (3) a nexus, or link, between the current disability and the in-service disease or injury. Davidson v. Shinseki, 581 F.3d 1313 (Fed. Cir. 2009). 

4. Entitlement to service connection for bilateral pes planus.

The Veteran contends that he has pes planus that became symptomatic during his active duty service. The Veteran has a current diagnosis of bilateral pes planus with chronic secondary foot pain and, during a September 2017 VA examination, he reported that his foot pain began during his active duty service. 

Every veteran is presumed to have been in sound condition at entry into service except as to defects, infirmities, or disabilities noted at the time of such entry, or where clear and unmistakable evidence demonstrates that the injury or disease existed before entry and was not aggravated by such service. 38 U.S.C. § 1111. Only such conditions as are recorded in examination reports are to be considered as “noted.” 38 C.F.R. § 3.304. 

A preexisting injury or disease will be considered to have been aggravated by active service where there is an increase in disability during such service, unless there is a specific finding that the increase in disability is due to the natural progress of the disease. 38 C.F.R. § 3.306. Clear and unmistakable evidence is required to rebut this presumption of aggravation where the preservice disability underwent an increase in severity during service. Id.

The Veteran’s October 1977 entrance examination report lists pes planus and characterizes it as mild. Therefore, the provisions of 38 U.S.C. § 1153 and 38 C.F.R. § 3.306 apply. At the time of the entrance examination, the Veteran denied any history of foot trouble. An October 1978 service treatment record notes the Veteran’s report of pain in his feet ever since boot camp; the treatment provider characterized his pes planus as moderate. 

The Veteran’s pes planus was noted at the time of entry into active duty service. There is also evidence in the Veteran’s service treatment records that his pes planus increased in severity during his active duty service. Absent any finding that this increase in severity was due to the natural progress of the disease, the Board does not find that there is clear and unmistakable evidence to rebut the presumption of aggravation. Service connection for pes planus based on aggravation of a preservice disability is warranted. 

REASONS FOR REMAND

1. Entitlement to service connection for a left hip disability.

The Veteran was afforded a VA examination in September 2017. The examiner opined that the Veteran’s left hip disability was less likely than not caused or aggravated by his service-connected bilateral knee disabilities because it was “the result of chronic weight bearing on the hips over a lifetime.” In a May 2018 statement, the Veteran described the weight of the items he had to carry during his active duty service and the distance he had to carry them, then contended that his current disability was “directly related to these activities.” A medical opinion based on an inaccurate factual premise has limited, if any, probative value. Reonal v. Brown, 5 Vet. App. 458, 461 (1993). Because the September 2017 VA examiner’s opinion was based on the assumption that the Veteran was not contending that his left hip disability was directly related to weight bearing during his active duty service, it was based on an inaccurate factual premise and is therefore inadequate. Because this duty to assist error occurred prior to the August 2018 rating decision, a remand is warranted.

2. Entitlement to service connection for a low back disability.

The Veteran was afforded a VA examination in September 2017. The examiner opined that the Veteran’s low back disability was less likely than not caused or aggravated by his service-connected bilateral knee disabilities because it was “the result of chronic weight bearing on the lumbar disc mechanism over a lifetime.” In a May 2018 statement, the Veteran described the weight of the items he had to carry during his active duty service and the distance he had to carry them, then contended that his current disability was “directly related to these activities.” Because the September 2017 VA examiner’s opinion was based on the assumption that the Veteran was not contending that his low back disability was directly related to weight bearing during his active duty service, it was based on an inaccurate factual premise and is therefore inadequate. See Reonal, 5 Vet. App. at 461. Because this duty to assist error occurred prior to the August 2018 rating decision, a remand is warranted.

The matters are REMANDED for the following action:

1. Arrange for a supplemental opinion by an appropriate clinician for the purpose of determining the etiology of the Veteran’s left hip disability. The entire claims file and a copy of this remand must be made available to the examiner for review, and the examiner must specifically acknowledge receipt and review of these materials in any reports generated. A new examination is only required if deemed necessary by the examiner. 

Although an independent review of the claims file is required, the Board calls the examiner’s attention to the September 2017 VA examiner’s finding that the Veteran’s left hip disability was due to weight bearing over time and the Veteran’s May 2018 statement regarding weight bearing during his active duty service. 

The examiner must provide an opinion as to whether it is at least as likely as not (50 percent or greater probability) that the Veteran’s left hip disability began during active service, is related to an incident of service, or began within one year after discharge from active service.

The rationale for any opinion expressed should be provided. Note that an absence of a left hip disability in service cannot serve as the sole basis for a negative finding. If an opinion cannot be made without resort to speculation, the examiner should so state and provide reasoning as to why a conclusion would be so outside the norm that such an opinion is not possible. 

2. Arrange for a supplemental opinion by an appropriate clinician for the purpose of determining the etiology of the Veteran’s low back disability. The entire claims file and a copy of this remand must be made available to the examiner for review, and the examiner must specifically acknowledge receipt and review of these materials in any reports generated. A new examination is only required if deemed necessary by the examiner. 

Although an independent review of the claims file is required, the Board calls the examiner’s attention to the September 2017 VA examiner’s finding that the Veteran’s low back disability was due to weight bearing over time, the Veteran’s May 2018 statement regarding weight bearing during his active duty service, and service treatment records from February 1979 and March 1979 noting the Veteran’s reports of low back pain and a diagnosis of a low back strain. 

The examiner must provide an opinion as to whether it is at least as likely as not (50 percent or greater probability) that the Veteran’s low back disability began during active service, is related to an incident of service, or began within one year after discharge from active service.

The rationale for any opinion expressed should be provided. Note that an absence of a low back disability in service cannot serve as the sole basis for a negative finding. If an opinion cannot be made without resort to speculation, the examiner should so state and provide reasoning as to why a conclusion would be so outside the norm that such an opinion is not possible. 

 

D. Martz Ames

Veterans Law Judge

Board of Veterans’ Appeals

ATTORNEY FOR THE BOARD Ryan Frank, Counsel